**EXHIBIT A**

**IN THE CIRCUIT COURT OF PHELPS COUNTY, MISSOURI**

| | |
|---|---|
| KRISTIN GRISHAM, Individually and on behalf of all others similarly situated in Missouri, ) ) ) ) ) | |
| Plaintiff, ) | No. _____ |
| v. ) ) | |
| WELCH FOODS, INC., A Cooperative and THE PROMOTION IN MOTION COMPANIES, INC. ) ) ) ) | |
| Defendants. ) | |

**COMPLAINT AND JURY DEMAND**

Plaintiff Kristin Grisham, individually and on behalf of all others similarly situated in Missouri ("Class Members" or the "Class"), alleges the following facts and claims upon personal knowledge, investigation of counsel, and information and belief against Welch Foods, Inc., a Cooperative ("Welch Foods"), which does business using its trademarked name "Welch's," and The Promotion in Motion Companies, Inc. ("Promotion in Motion") (collectively, "Defendants").

**NATURE OF THE CASE**

1. "Informed consumers are essential to the fair and efficient functioning of a free market economy. Packages . . . should enable consumers to obtain accurate information as to the quantity of the contents and should facilitate value comparisons." 15 U.S.C.A. § 1451.

2. The average consumer spends a mere 13 seconds making an in-store purchasing decision.[1] That decision is heavily dependent on a product's packaging, and particularly the

---

[1] http://www.nielsen.com/us/en/insights/news/2015/make-the-most-of-your-brands-20-second-window.html (citing the Ehrenberg-Bass Institute of Marketing Science's report "Shopping Takes Only Seconds…In-Store and Online") (last accessed October 20, 2016).

1

package dimensions: "'Most of our studies show that 75 to 80 percent of consumers don't even bother to look at any label information, no less the net weight' . . . . Faced with a large box and a smaller box, both with the same amount of product inside . . . consumers are apt to choose the larger box because they think it's a better value."[2]

3. Plaintiff brings this class-action lawsuit based on Defendants' misleading, deceptive and unlawful conduct in packaging Welch's Fruit Snacks ("Products") in non-transparent cardboard boxes, which are substantially under-filled or "slack-filled." The slack-fill serves no functional purpose. Consumers paid a premium for the Products, which they would not have purchased had they known that the containers were substantially empty, or would have purchased them on different terms.

4. Accordingly, Plaintiff brings this action on behalf of herself and all others similarly situated to recover damages and injunctive relief for Defendants' false, deceptive, and misleading conduct in violation of the Missouri Merchandising Practices Act ("MMPA") and Missouri common law, and for disgorgement of Defendants' unjust enrichment.

**PARTIES**

5. Plaintiff, Kristin Grisham, is a resident of Rolla, Missouri. On at least one occasion during the Class Period (as defined below), Plaintiff purchased Welch's Fruit Snacks at a Kroger store in Rolla, Missouri, for personal, family, or household purposes. The purchase price of the Product was $6.99. Plaintiff's claim is typical of all Class Members in this regard. In addition, the non-functional slack-fill contained in the Product purchased by Plaintiff is typical of the slack-fill contained in the Products purchased by Class Members.

---

[2] http://www.consumerreports.org/cro/magazine-archive/2010/january/shopping/product-packaging/overview/product-packaging-ov.htm (quoting Brian Wansink, professor and director of the Cornell Food and Brand Lab, who studies shopping behavior of consumers) (last accessed October 20, 2016).

6. Defendant Welch Foods, Inc. is a corporation organized under the laws of Michigan. Its principal place of business is located at 300 Baker Avenue, Suite 101, Concord, Massachusetts 01742 and with Corporation Service Company, 84 State Street, Boston, Massachusetts 02109 designated as its agent for service of process.

7. Defendant Promotion in Motion is a corporation organized under the laws of New Jersey. Its principal place of business is located at 25 Commerce Drive, Allendale, New Jersey 07401 and with Michael G. Rosenberg, 25 Commerce Drive, Allendale, New Jersey 07401 designated as its agent for service of process.

8. Promotion in Motion produces, markets, and distributes the Products under authority of Welch Foods. At all relevant times, Defendants acted in concert, and manufactured, marketed, distributed, packaged, labeled, promoted, and sold the Products to consumers throughout the United States, including within the State of Missouri. In committing the wrongful acts alleged herein, Defendants, in concert with their subsidiaries, affiliates, and/or other related entities, planned, participated in, and furthered a common scheme to induce members of the public to purchase the Products by means of their misleading, deceptive, and unlawful conduct.

## JURISDICTION AND VENUE

9. This Court has subject matter jurisdiction over this action because the amount in controversy exceeds the minimum jurisdictional limits of the Court. The amount in controversy is less than $75,000 per Plaintiff and Class Member individually and less than $5,000,000 in the aggregate. Plaintiff believes and alleges that the total value of her individual claims is at most equal to the refund of the purchase price she paid for the Product.

10. Moreover, because the value of Plaintiff's claims is typical of the claim value of each Class Member, the total damages to Plaintiff and Class Members, inclusive of costs and

attorneys' fees, will not exceed $4,999,999 and is less than the five million dollar ($5,000,000) minimum threshold necessary to create federal court jurisdiction.

11. Defendants cannot plausibly allege it has sold sufficient Products in Missouri during the Class Period to satisfy CAFA's jurisdictional minimum amount in controversy.

12. Based on the allegations of the foregoing paragraphs, there is no diversity or CAFA jurisdiction for this case.

13. This Court has personal jurisdiction over Defendants pursuant to § 506.500, RSMo., as Defendants have had more than sufficient minimum contact with the State of Missouri and have availed themselves of the privilege of conducting business in this state. Additionally, and as explained below, Defendants have committed affirmative tortious acts within the State of Missouri that give rise to civil liability, including distributing and selling the misbranded Products throughout the State of Missouri.

14. Venue is proper in this forum pursuant to §§ 508.010 and 407.025.1, RSMo., because the transactions complained of occurred in Phelps County, Missouri and Plaintiff was injured in Phelps County, Missouri.

## ALLEGATIONS OF FACT

### Federal and Missouri State Law Prohibit Non-Functional Slack-Fill

15. Defendants' deceptive and misleading conduct, as described herein, violates the Federal Food, Drug and Cosmetic Act ("FDCA") Section 403 (21 U.S.C. § 343); Section 403(d) (21 U.S.C. § 343(d)); and the Code of Federal Regulations Title 21 part 100, *et seq*., as well as parallel Missouri statutes. As described in detail below, these violations contravene Missouri's Merchandising Practices Act, which prohibits deceptive, fraudulent, misleading and unfair

4

conduct in connection with the sale or advertisement of any merchandise in trade or commerce. § 407.020.43, RSMo.

      16.      21 C.F.R. § 100.100 prohibits nonfunctional slack-fill:

In accordance with section 403(d) of the act, a food shall be deemed to be misbranded if its container is so made, formed, or filled as to be misleading.

(a) A container that does not allow the consumer to fully view its contents shall be considered to be filled as to be misleading if it contains nonfunctional slack-fill. Slack-fill is the difference between the actual capacity of a container and the volume of product contained therein. Nonfunctional slack-fill is the empty space in a package that is filled to less than its capacity for reasons other than:

    (1) Protection of the contents of the package;

    (2) The requirements of the machines used for enclosing the contents in such package;

    (3) Unavoidable product settling during shipping and handling;

    (4) The need for the package to perform a specific function (e.g., where packaging plays a role in the preparation or consumption of a food), where such function is inherent to the nature of the food and is clearly communicated to consumers;

    (5) The fact that the product consists of a food packaged in a reusable container where the container is part of the presentation of the food and has value which is both significant in proportion to the value of the product and independent of its function to hold the food, e.g., a gift product consisting of a food or foods combined with a container that is intended for further use after the food is consumed; or durable commemorative or promotional packages; or

    (6) Inability to increase level of fill or to further reduce the size of the package (e.g., where some minimum package size is necessary to accommodate required food labeling (excluding any vignettes or other nonmandatory designs or label information), discourage pilfering, facilitate handling, or accommodate tamper-resistant devices).

      17.      In addition, pursuant to 21 C.F.R. § 100.100, a container is presumptively misleading if it does not allow the consumer to fully view its contents and if it contains nonfunctional slack-fill.

Electronically Filed - Phelps - October 27, 2016 - 02:55 PM

18. Missouri state law also prohibits non-functional slack-fill and incorporates language identical to the C.F.R.: "[F]ood shall be deemed to be misbranded: . . . . (4) If its container is so made, formed or filled as to be misleading." § 196.075, RSMo.

19. None of the enumerated safe-harbor provisions described above applies to the Products, thereby rendering the Products' slack-fill "nonfunctional" and unlawful. Defendants intentionally incorporated non-functional slack-fill in their packaging of the Products in order to mislead consumers, including Plaintiff and Members of the Class. *Waldman v. New Chapter, Inc.,* 714 F. Supp. 2d 398, 405 (E.D.N.Y. 2010) ("Misleading consumers is not a valid reason to package a product with slack-fill. *See* 21 C.F.R. § 100.100(a)(1-6).").

### Defendants' Products Contain Substantial Non-Functional Slack-Fill

20. Defendants, acting in concert, manufacture, market, promote, label, advertise, and sell the Products at issue.

21. The Products are gummy-like fruit snacks and yogurt-covered/peanut-butter-covered fruit snacks, sold in many varieties, including but not limited to Apple Orchard Medley Fruit Snacks; Mixed Fruit Fruit Snacks; Berries 'N Cherries Fruit Snacks; Strawberry Fruit Snacks; Island Fruits Fruit Snacks; Tangy Fruits Fruit Snacks; Fruit Punch Fruit Snacks; Concord Grape Fruit Snacks; White Grape Raspberry Fruit Snacks; Mixed Fruit Reduced Sugar Fruit Snacks; Fruit'n Yogurt Cherry Snacks; Fruit'n Yogurt Strawberry Snacks; Fruit'n Yogurt Blueberry Snacks; and PB&J Creamy Strawberry Snacks.

Electronically Filed - Phelps - October 27, 2016 - 02:55 PM



22.     The Products are sold throughout the State of Missouri, and are regularly sold at grocery stores, supermarkets and other food retail outlets.

23.     Defendants misleadingly package the Products to incorporate multiple layers of unlawful slack-fill: Defendants first package the Products in individual non-transparent pouches, each of which contains considerable non-functional slack-fill.  The slack-filled pouches are further packaged in a non-transparent cardboard container, which also incorporates considerable non-functional slack-fill.



Individual Pouch of Fruit Snacks:



Contents of One Pouch of Fruit Snacks:



8

24. The Product containers are an implicit representation of the amount of product contained therein, because consumers reasonably assume that the Products will contain a full complement of product.

25. Reasonable consumers, such as Plaintiff, attached importance to the Products' size as a basis for their purchasing decisions.

26. Defendants' Products are misleading because they contain non-functional slack-fill and the Products' non-transparent cardboard containers prevented Plaintiff and Class Members from viewing the amount of product contained therein. Moreover, the slack-fill cannot be legally justified under any of the enumerated safe-harbor provisions of 21 C.F.R. § 100.100.

27. Plaintiff and Class Members did not know, and had no reason to know, that the Product packaging contained non-functional slack-fill.

28. Defendants' Product packaging was a material factor in Plaintiff's decision to purchase the Products. Based on the Product packaging, Plaintiff and the Class Members believed that they were getting more Product than was actually being sold. Had Plaintiff and Class Members known Defendants' packaging was slack-filled, they would not have purchased the Products, or would not have paid a premium to purchase them.

29. Plaintiff and Class Members suffered an ascertainable loss as a result of Defendants' unlawful conduct, including the percentage of non-functional slack-fill relative to the purchase price paid.

## CLASS ALLEGATIONS

30. Pursuant to Missouri Rule of Civil Procedure 52.08 and § 407.025.2 of the MMPA, Plaintiff brings this action on her own behalf and on behalf of a proposed class of all other similarly situated persons consisting of:

> All Missouri citizens who purchased the Products in the five years preceding the filing of this Petition (the "Class Period").

31. Excluded from the Class are: (a) federal, state, and/or local governments, including, but not limited to, their departments, agencies, divisions, bureaus, boards, sections, groups, counsels, and/or subdivisions; (b) any entity in which Defendants have a controlling interest, to include, but not limited to, their legal representative, heirs, and successors; (c) all persons who are presently in bankruptcy proceedings or who obtained a bankruptcy discharge in the last three years; and (d) any judicial officer in the lawsuit and/or persons within the third degree of consanguinity to such judge.

32. Upon information and belief, the Class consists of hundreds or thousands of purchasers. Accordingly, it would be impracticable to join all Class Members before the Court.

33. There are numerous and substantial questions of law or fact common to all of the members of the Class that predominate over any individual issues. Included within the common questions of law or fact are:

    a. Whether the Products' container or packaging is so made, formed, or filled as to be misleading;

    b. Whether the Products contained non-functional slack-fill;

    c. Whether Defendants violated the MMPA by selling the Products in containers with non-functional slack-fill;

    d. Whether, and to what extent, injunctive relief should be granted to prevent such conduct in the future;

    e. Whether Defendants have been unjustly enriched by the sale of the Products to the Plaintiff and Class;

Electronically Filed - Phelps - October 27, 2016 - 02:55 PM

Electronically Filed - Phelps - October 27, 2016 - 02:55 PM

      f.      Whether Plaintiff and Class Members have sustained damages as a result of Defendants' unlawful conduct; and

      g.      The proper measure of damages sustained by Plaintiff and Class Members.

34.      The claims of the Plaintiff are typical of the claims of Class Members, in that she shares the above-referenced facts and legal claims or questions with Class Members, there is a sufficient relationship between the damage to Plaintiff and Defendants' conduct affecting Class Members, and Plaintiff has no interests adverse to the interests of other Class Members.

35.      Plaintiff will fairly and adequately protect the interests of Class Members and has retained counsel experienced and competent in the prosecution of complex class actions including complex questions that arise in consumer protection litigation.

36.      A class action is superior to other methods for the fair and efficient adjudication of this controversy, since individual joinder of all Class Members is impracticable and no other group method of adjudication of all claims asserted herein is more efficient and manageable for at least the following reasons:

      a.      The claims presented in this case predominate over any questions of law or fact, if any exists at all, affecting any individual member of the Class;

      b.      Absent a Class, the Class Members will continue to suffer damage and Defendants' unlawful conduct will continue without remedy while Defendants profit from and enjoy their ill-gotten gains;

      c.      Given the size of individual Class Members' claims, few, if any, Class Members could afford to or would seek legal redress individually for the wrongs Defendants committed against them, and absent Class Members

11

        have no substantial interest in individually controlling the prosecution of individual actions;

    d.    When the liability of Defendants has been adjudicated, claims of all Class Members can be administered efficiently and/or determined uniformly by the Court; and

    e.    This action presents no difficulty that would impede its management by the Court as a class action which is the best available means by which Plaintiff and members of the Class can seek redress for the harm caused to them by Defendants.

37.    Because Plaintiff seeks relief for the entire Class, the prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual member of the Class, which would establish incompatible standards of conduct for Defendants.

38.    Further, bringing individual claims would overburden the Courts and be an inefficient method of resolving the dispute, which is the center of this litigation.  Adjudications with respect to individual members of the Class would, as a practical matter, be dispositive of the interest of other members of the Class who are not parties to the adjudication and may impair or impede their ability to protect their interests.  As a consequence, class treatment is a superior method for adjudication of the issues in this case.

## CLAIMS FOR RELIEF

### COUNT I:
### Violation of Missouri's Merchandising Practices Act

39.    Plaintiff repeats and re-alleges the allegations of the preceding paragraphs as if fully set forth herein.

12

40. Plaintiff brings this claim individually and on behalf of the Class for Defendants' violations of the MMPA. The MMPA "is designed to regulate the marketplace to the advantage of those traditionally thought to have unequal bargaining power as well as those who may fall victim to unfair practices." *Huch v. Charter Commc'ns Inc.*, 290 S.W. 3d 721, 725 (Mo. banc. 2009). The MMPA provides that it is unlawful to "act, use or employ . . . deception, fraud, false pretense, false promise, misrepresentation, unfair practice or the concealment, suppression, or omission of any material fact in connection with the sale or advertisement of any merchandise in trade or commerce . . . ." § 407.020.1, RSMo.

41. Defendants' conduct as described above constitutes the act, use or employment of deception, fraud, false pretenses, false promises, misrepresentation, unfair practices and/or the concealment, suppression, or omission of any material facts in connection with the sale or advertisement of any merchandise in trade or commerce in that Defendants incorporate substantial non-functional slack-fill into the Products' non-transparent packaging. As such, the Product containers are made, formed, or filled as to be misleading.

42. Defendants' misrepresentations and omissions as set forth in this Complaint are material in that they relate to matters that are important to consumers and/or are likely to affect the purchasing decisions or conduct of consumers, including Plaintiff and Class Members.

43. In violation of the MMPA, Defendants employed fraud, deception, false promise, misrepresentation and/or the knowing concealment, suppression or omission of material facts in its sale and advertisement of the Products.

44. Plaintiff and Class Members purchased the Products for personal, family, or household purposes.

45.     Plaintiff and Class Members suffered an ascertainable loss as a result of Defendants' unlawful conduct as alleged herein, including the difference between the actual value of the purchased Products and the value of the Products if they had been as represented. Had Plaintiff and Class Members known the truth about the Products, they would not have purchased the Products, or would have purchased the Products on different terms.

46.     In addition, Defendants' conduct has caused Plaintiff and Class Members irreparable injury.  As described herein, Defendants have engaged in unlawful and misleading conduct on a routine and automated basis, harming Missouri consumers in a uniform manner. Unless restrained and enjoined, Defendants will continue such conduct.  As authorized under § 407.025.2, RSMo., Plaintiff requests injunctive relief, and such other equitable relief as the Court deems just and proper.

## COUNT II:
### Unjust Enrichment

47.     Plaintiff repeats and re-alleges the allegations of the preceding paragraphs as if fully set forth herein.

48.     By purchasing the Products, Plaintiff and Class Members conferred a benefit on Defendants in the form of the purchase price of the slack-filled Products.

49.     Defendants had knowledge of such benefits.

50.     Defendants appreciated the benefit because, were consumers not to purchase the Products, Defendants would not generate revenue from the sales of the Products.

51.     Defendants' acceptance and retention of the benefit is inequitable and unjust because the benefit was obtained by Defendants' fraudulent and misleading representations and omissions.

52. Equity cannot in good conscience permit Defendants to be economically enriched for such actions at the Plaintiff's and Class Members' expense and in violation of Missouri law, and therefore restitution and/or disgorgement of such economic enrichment is required.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of all similarly situated persons in Missouri, prays the Court:

a. Grant certification of this case as a class action;

b. Appoint Plaintiff as Class Representative and Plaintiff's counsel as Class Counsel;

c. Award compensatory damages to Plaintiff and the proposed Class in an amount which, when aggregated with all other elements of damages, costs, and fees, will not exceed $75,000 per Class Member and/or $4,999,999 for the entire Class, or, alternatively, require Defendants to disgorge or pay restitution in an amount which, when aggregated with all other elements of damages, costs, and fees, will not exceed $75,000 per Class Member and/or $4,999,999 for the entire Class;

d. Award pre- and post-judgment interest in an amount which, collectively with all other elements of damages, costs, and fees will not exceed $75,000 per Class Member and/or $4,999,999 for the entire Class;

e. Award reasonable and necessary attorneys' fees and costs to Class counsel, which, collectively with all other elements of damages, costs, and fees will not exceed $75,000 per Class Member and/or $4,999,999 for the entire Class; and

f. For all such other and further relief as may be just and proper.

Dated this 27th day of October 2016.

                                      Kristin Grisham, Individually, and on Behalf of a Class of Similarly Situated Individuals, Plaintiff

By:   /s/ David L. Steelman
       David L. Steelman, #27334
       dsteelman@steelmanandgaunt.com
       Stephen F. Gaunt, #33183
       sgaunt@steelmanandgaunt.com
       Patrick J. Horsefield, #50380
       phorsefield@steelmanandgaunt.com
       STEELMAN, GAUNT & HORSEFIELD
       901 Pine Street, Suite 110
       Rolla, Missouri 65401
       Tel:   (573) 458-5231
       Fax:  (573) 341-8548

Attorneys for Plaintiff and the Putative Class